**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| EDWARD LEON CATES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 12-CV-111-TLW |
| ) | |
| CAROLYN W. COLVIN,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Edward Leon Cates requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying plaintiff's application for social security income under Title XVI of the Social Security Act. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. (Dkt. # 11). Any appeal of this order will be directed to the Tenth Circuit Court of Appeals. For the reasons discussed below, this Court AFFIRMS the decision of the Commissioner.[2]

**Procedural History**

On November 14, 2008, plaintiff filed an application for supplemental security income benefits under Title XVI of the Social Security Act, Section 1631(c)(3) which is also Section 1383(c) of Title 42 of the United States Code. Plaintiff alleges disability beginning August 20,

---

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

[2] It is worth noting at this point that the briefing by both sides on this appeal was on point, well written, and clearly focused. Plaintiff's opening brief and reply brief were particularly helpful to the Court. Although the Court does not ultimately agree with plaintiff on appeal, the Court's decision should not detract from the high quality of the work as reflected in plaintiff's briefs.

2007. The claim was denied initially on June 23, 2009, and upon reconsideration on January 21, 2010. Thereafter, claimant filed a written request for hearing on February 4, 2010. 20 C.F.R. § 416.1429 *et seq*. Claimant appeared and testified at a hearing held on September 14, 2010, in Tulsa, Oklahoma. Christy V. Wilson, a vocational expert, also appeared at the hearing.

### Standard of Review and Social Security Law

When applying for disability benefits, a plaintiff bears the initial burden of proving that he or she is disabled. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A plaintiff is disabled under the Act only if his or her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Id. at 750.

The role of the Court in reviewing a decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Id. The Court's

review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources" such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a).

**Issues**

Plaintiff's allegations of error are as follows:

1. The ALJ's finding that plaintiff's back impairment did not meet Listing 1.04 at least for the period February 2008 through June 2009 is not supported by substantial evidence;[3] and

2. The ALJ failed to properly consider plaintiff's credibility.

---

[3] Plaintiff identifies as a specific error the ALJ's failure to find that he meets a listing, without any date limitation. (Dkt. # 15 at 4). However, plaintiff's argument essentially acknowledges that in June 2009, an examination performed by Dr. Patterson provided sufficient evidence to support the ALJ's findings for the time period after Dr. Patterson's examination. To the extent that plaintiff is not expressly acknowledging that Dr. Patterson's examination findings constitute substantial evidence that supports the ALJ's decision for the period after June 2009, the Court finds that they do.

(Dkt. # 15 at 4). The second allegation of error is never addressed by plaintiff, so it is waived. Murrell v. Shalala, 43 F.3d 1388, 1389 (10th Cir. 1994).

### Medical Records and Decision of the ALJ

The Court has limited this summary to those portions of the ALJ's decision that relate to the first allegation of error, Listing 1.04, to those medical records relevant to plaintiff's spine, and to those medical records relied on by plaintiff in support of his appeal.

Plaintiff relies on two medical records to argue that he met Listing 1.04 from February 2008 through June 2009. First, he relies on an MRI taken October 4, 2007 at the Jane Phillips Medical Center, which reveals a small central L3-L4 disc herniation without spinal stenosis and a large right L4-L5 disc herniation with right L5 nerve root contact. (R. 219). Second, plaintiff relies on the physical consultative examination performed by Patrice Wagner, D.O. on February 18, 2008.[4] In her examination, Dr. Wagner notes that plaintiff suffers from distribution of pain and decreased range of motion (ROM) by ten percent in flexion, weak toe strength (4/5 rather than 5/5), an inability to toe or heel walk, and some loss of sensation in the right lower extremity. In addition, plaintiff points to his SLR test, which was positive bilaterally both sitting and supine. (R. 256-62). Dr. Wagner assessed plaintiff with chronic back and leg pain, degenerative joint disease at T8-T11, lumbar disc herniation at L3-4 and L4-5, high blood pressure, and obesity. (R. 257).

The ALJ found that plaintiff had the severe impairments of "degenerative disc disease of the thoracic and lumbar spine, obesity, [and] hypertension." (R. 13). The ALJ found that plaintiff's impairments did not meet or medically equal a listed impairment, specifically section 1.04, disorders of the spine. (R. 13-15). This is the only finding at issue on appeal. The ALJ

---

[4] The ALJ's decision refers to this examination as a "psychological" exam. (R. 18). This reference is obviously a scrivener's error that does not impact the decision.

4

stated his conclusions at this step were "supported by the discussion of the evidence as set out in this opinion. As the evidence demonstrates, none of the claimant's alleged impairments meet the exact requirements of any specific listings." (R. 14). The ALJ quoted the requirements of listing 1.04 and the general overview of section 1.00 of 20 C.F.R. Part 404, Subpart P, Appendix 1 under this step. (R. 13-14).

The ALJ's discussion of the evidence, as it relates to Listing 1.04, can be summarized as follows:

1. Plaintiff received an x-ray on April 18, 2007, of his thoracic spine which "revealed degenerative changes with multilevel degenerative disc disease and large osteophytes but no acute fracture or dislocation." (R. 17, 189).

2. On September 23, 2007, plaintiff went to the emergency room of Jane Phillips Medical Center complaining of low back pain. An examination showed that plaintiff had tenderness in the lumbar spine, but his extremities, sensation, motor strength, and reflexes were all within normal limits. Plaintiff was diagnosed with lumbar strain. (R. 17, 194-95).

3. On September 29, 2007, plaintiff went to Generations Family Medical Clinic, again complaining of low back pain. An examination revealed "decreased range of motion of the spine with muscle spasm and tightness," and he was diagnosed with degenerative disc disease of the thoracic spine, osteoarthritis of the spine, and lumbar pain. (R. 17, 212-13).

4. On October 4, 2007, plaintiff received an MRI at Jane Phillips Medical Center. The MRI showed "a small central L3-L4 disc herniation without spinal stenosis and a larger right L4-L5 disc herniation with right L5 nerve root contact." (R. 17, 219). It is

this MRI on which plaintiff relies for his allegation that he met the first prong of the Listing 1.04 criteria.

5. On January 31, 2008, plaintiff went to the emergency room at Jane Phillips Medical Center, for complaints of chest pain. Plaintiff reported no pain in his legs with walking. An examination showed lumbar spine tenderness, normal sensation to his lower extremities with mild weakness, and strong bilateral pedal pulses. (R. 17-18, 223-26). He was discharged the next day with diagnoses of atypical chest pain and hypertension.

6. On February 18, 2008, plaintiff saw Patrice Wagner, D.O. for a consultative examination at the request of the agency. (R. 18, 256-62). Dr. Wagner found that plaintiff moved his extremities well, that his grip strength was equal bilaterally and rated 5 of 5, and that his toe strength was weak bilaterally and rated 4 of 5. No focal deficits were found. Dr. Wagner found decreased sensation in plaintiff's right leg, Rhomberg and Babinski tests were negative, decreased range of spinal motion, adequate finger to thumb opposition, normal fine tactile manipulation, and positive straight leg raising bilaterally in both the seated and supine position. Id. Plaintiff walked "with an unstable gait at a slow speed without use of assistive devices," and displayed a "moderate limp favoring right foot and leg." Id. Plaintiff told Dr. Wagner that he used a cane when walking, but did not bring it to the exam with him. Although plaintiff did not need or use any assistance from the wall or a chair for stabilization, and Dr. Wagner said that his gait was stable and safe at short distances, she opined that he would need a cane "to safely ambulate longer distances." (R. 262).

7. On March 29, 2008, Dr. Judy Marks-Snelling, a physician at the State Disability Determination Services, determined, after a review that included Dr. Wagner's findings, that plaintiff was able to perform sedentary work with postural limitations. Those limitations included: occasionally climbing ramps, stairs, ladders, rope, and scaffolds; and occasionally balancing, stooping, kneeling, crouching, and crawling. (R. 18, 263-71). The ALJ specifically discussed Dr. Snelling's report and summarized her findings as set forth in the prior sentence. (R. 18). The ALJ also noted that he had reviewed and considered the entire medical record. (R. 13). Dr. Snelling concluded that "[t]his is not a listing far from it." (R. 263).

8. On May 14, 2009, Dr. Alfred T. Cox, a physician with Generations Family Medical Clinic, submitted a statement to assist plaintiff in placing his student loans "on hold." (R. 18, 285). The certificate shows diagnoses of "severe to advanced" spinal arthritis and degenerative disc disease of the thoracic and lumbar spine. Dr. Cox also indicated plaintiff could not lift without pain, that he could sit for less than an hour, and "standing and walking [were] impossible." Id. The ALJ subsequently explained that he gave "no weight" to Dr. Cox's findings because "[t]here is no medical evidence to support these limitations." (R. 19). Plaintiff does not appeal this determination.

9. On June 5, 2009, a second consultative examination was performed by Dr. Keith Patterson. (R. 19, 286-92). This examination revealed no neck pain, regular heart rate and rhythm, good movement of all extremities, no difficulty manipulating small objects, and equal bilateral grip and "great toe strength," both rated at 5 of 5. Id. Dr. Patterson noted plaintiff's gait was antalgic, but that plaintiff "had nearly full, but painful range of motion of the spine." Id. Straight leg raise testing was negative

     bilaterally in the seated position and positive bilaterally in the supine position. Id. Dr. Patterson found that plaintiff had normal bilateral toe and heel walking and that plaintiff moved "slowly with antalgic gait at an appropriate speed without use of assistive devices." Id.

10. On June 18, 2009, Dr. Cox found no significant neuro deficits (R. 19, 294). On April 12, 2010, Johanna Weir, PAC of Generations Family Medical Clinic, noted "tenderness in the thoracic and lumbar spine with no decrease [in] range of motion." Id.

11. On May 4, 2010, plaintiff visited Jane Phillips Medical Center with complaints of back pain following a fall.[5] (R. 19, 328-40). The examination revealed normal range of motion in plaintiff's back with normal alignment, "tenderness in the thoracic and lumbar spine with no decrease in range of motion," normal range of motion and limits for all extremities, normal reflexes, and the ability to walk, albeit with an antalgic gait. Id. X-rays of plaintiff's lumbar spine showed "no acute fractures and mild diffuse degenerative changes," and x-rays of the thoracic spine also revealed no acute fractures, but showed "anterior osteophyte formations at multiple levels (Exhibit 23F)." Id.

After reviewing the medical evidence, the ALJ explained that the record contained no "opinions from treating or non-treating physicians indicating that the claimant is disabled or has limitations greater than those determined in this decision." The ALJ found the RFC recommendation from State Disability Determination Services physicians were consistent with

---

[5] Plaintiff stated during this visit that the onset of his pain was "abrupt," had lasted four days, that he was "not unable to walk and not unable to do activities of daily living," and said that prior occasions of this pain were "occasional." (R. 328, 332).

the medical evidence of record. (R. 19-20). The ALJ also stated that he afforded "great weight" to the "opinions of the consultative examiners and medical consultants of the State Disability Determination Services (DDS)," and found "that the medical evidence and opinions are consistent" with the RFC to:

> perform sedentary work as defined in 20 CFR 416.967(a) except the claimant is able to climb stairs only occasionally, is able to bend, stoop, crouch, and crawl only occasionally, and is unable to climb ropes, ladders, and scaffolds.

(R. 15).

## **Analysis**

In order to meet Listing 1.04, a plaintiff must show, for a period of at least one continuous year (20 C.F.R. § 416.909), the presence of: (1) a disorder of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord; and (2) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is some involvement of the lower back, positive straight-leg raising test (sitting and supine).[6] See 20 C.F.R. Part 404, Subpart P, Appendix 1.

Plaintiff argues that he met Listing 1.04A for the period from February 18, 2008 through June 5, 2009, based on Dr. Wagner's February 18, 2008 examination. In addition, plaintiff argues that the one year requirement is met because there is no evidence that contradicts Dr. Wagner's findings prior to June 5, 2009. Finally, citing a statement from the ALJ at the hearing,

---

[6] There are two other showings that would satisfy the second element: spinal arachnoiditis or lumbar spinal stenosis. Plaintiff does not argue the presence of either.

plaintiff asserts that the ALJ applied the wrong legal standard with respect to the one year requirement.

As to the first criteria, plaintiff directs the Court to his October 4, 2007, lumbar MRI to establish that he has a disorder of the spine resulting in compromise of a nerve root or the spinal cord. (R. 208). As to the second criteria, plaintiff directs the Court to Dr. Wagner's report to establish evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is some involvement of the lower back, positive straight-leg raising test (sitting and supine).

With respect to the first criteria and the MRI, the radiologist's report concludes that plaintiff has: "Small central L3-4 herniation without spinal stenosis [and] Larger right L4-5 disc herniation with right L5 nerve root contact." Id. (numbering omitted). However, there is no medical evidence in the record, and the report does not provide any, that an L4-5 disc herniation with right L5 nerve root *contact* is the equivalent of a spinal disorder that includes nerve root *compromise*. Even were the Court to assume that *contact* is the equivalent of *compromise*, plaintiff must show evidence of nerve root compression "characterized by neuro-anatomic distribution of pain . . . .." (part of the second criteria).[7] In other words, the nerve root compression must be causing the pain. But Dr. Wagner's report, upon which plaintiff relies to establish the second criteria, does not reach this conclusion. (R. 256-61). Rather, as plaintiff notes, Dr. Wagner's report merely documents the existence of pain and decreased ROM in

---

[7] "Neuro-anatomic distribution of pain" is generally defined as complaints of pain directly generated by the compromised nerve.

10

plaintiff's flexion.[8] Dr. Wagner does not even mention the existence of nerve root compromise or compression, much less connect it to plaintiff's pain.[9] Id. Thus, neither the MRI nor Dr. Wagner's report establish that plaintiff has nerve root compression characterized by "neuro-anatomic distribution of pain," and on this point, the ALJ was correct that there are no opinions from physicians indicating that plaintiff is disabled or has limitations greater than those determined in his decision.

Although the analysis could end here, the Court will address plaintiff's remaining arguments as well.

Plaintiff argues that Dr. Wagner's records also establish the remaining criteria for Listing 1.04A. Plaintiff argues that the report notes motor loss (muscle weakness), including weak toe strength and inability to toe or heel walk (muscle weakness), a loss of sensation in the right lower extremity (sensory loss), and a positive SLR test bilaterally, both sitting and supine. (R. 257). Again, although Dr. Wagner notes that plaintiff's toe strength is "weak bilaterally and rated 4/5," she does not tie this weakness to plaintiff's assumed nerve root compression. Id. Likewise, Dr. Wagner does not tie plaintiff's "decreased sensation" or positive bilateral SLR test to the assumed nerve compression. Id. Even if the Court were to assume that plaintiff met all the Listing 1.04 criteria based solely on the MRI and Dr. Wagner's report, the ALJ's decision would still be supported by substantial evidence.

Two months after Dr. Wagner completed her report, an agency reviewer, Dr. Marks-Snelling, examined plaintiff's medical records and assigned him a sedentary RFC. Dr. Marks-Snelling also opined, with respect to plaintiff's medical records, "[t]his is not a listing far from

---

[8] Dr. Wagner found a ten percent decrease in flexion, no decrease in extension, left bend, or right bend. Dr. Wagner found the presence of pain on all four range of motion tests.

[9] Dr. Wagner presumably had the MRI since she assesses plaintiff with lumbar disc herniation at L3-4 and L4-5. (R. 257).

it." The ALJ clearly relied on this opinion. (R. 17-19) (The ALJ summarized Dr. Marks-Snelling's findings, found that the RFC recommendations from the State Disability Determination Services physicians were consistent with the medical evidence of record, and afforded "great weight" to the "opinions of the consultative examiners and medical consultants of the State Disability Determination Services (DDS)." Plaintiff does not challenge the ALJ's decision in this regard.). Plaintiff argues that Dr. Marks-Snellings' report is not substantial evidence. The regulations and case law are to the contrary. See Flaherty v. Astrue, 515 F.3d 1067, 1071 (10th Cir. 2007) ("The non-examining physician's opinion is an acceptable medical source, which the ALJ was entitled to consider.") (citing 20 C.F.R. § 404.1513(a)(1)); Salisbury v. Comm'r of Soc. Sec., 2013 WL 427733 (N.D. Ohio Feb. 1, 2013) (non-examining, reviewing doctors' opinions ". . . provide[d] substantial support for the ALJ's ruling that Plaintiff did not meet or equal Listing 1.04, . . .."). Thus, plaintiff provides no support for his statement that Dr. Marks-Snellings' report is "hardly substantial evidence."

Plaintiff also argues that Dr. Cox's May 1, 2009 statement in support of plaintiff's effort to delay his student loans supports plaintiff's position. The ALJ gave no weight to Dr. Cox's statements, and plaintiff does not challenge the ALJ's decision in this regard.[10]

Finally, plaintiff takes issue with the ALJ's finding that plaintiff did not meet Listing 1.04 over the proper period of time. There is no doubt that a plaintiff has the burden of establishing that he or she meets the criteria set forth in a listing for a continuous period of one year. See supra at 9. Notes in Dr. Marks-Snellings' report indicate that in forming her opinion, she evaluated Dr. Wagner's report ("Toe strength was weak bilat @ 4/5 . . . Had decreased sensation of RLE . . .") and the earlier MRI ("10/4/07 MRI L-spine . . ."). Thus, it is clear that her opinion

---

[10] A review of the medical records indicates that Dr. Cox's statement is not only inconsistent with the remainder of the medical evidence, it is inconsistent with his own records.

addressed a time frame well within any continuous one year period during which plaintiff contends he met Listing 1.04. In addition, neither Dr. Wagner's report, nor any of the other evidence in the medical record establishes that the one year period was met, even if Dr. Wagner's report established that plaintiff met Listing 1.04 at the time she examined plaintiff. Plaintiff, through his "medical improvement" argument, is attempting, improperly, to shift the burden of meeting the one year time period to the Commissioner.[11]

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner finding plaintiff not disabled is AFFIRMED.

SO ORDERED this 20th day of September, 2013.

_____
T. Lane Wilson
United States Magistrate Judge

---

[11] Plaintiff's is correct that the Commissioner has the burden of establishing "medical improvement," but only where there has been a prior finding that a plaintiff is disabled. Here, such a finding was never made.